UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 8:09-cr-585-T-24TBM

MARIAN MORGAN,

_____/

**ORDER**

This cause comes before the Court for consideration of Defendant Marian Morgan's Renewed Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 and Motion for New Trial Pursuant to Federal Rule of Criminal Procedure Rule 33. (Dkt. 306.) The Government filed a response in opposition to the motion. (Dkt. 312.) The motion is timely.

**I.    Background**

The trial of this matter took place over a period of seventeen days beginning on September 6, 2011. On September 29, 2011, the jury returned verdicts of guilty against Defendant Marian Morgan on all 22 counts alleged in the Superceding Indictment. Contrary to the defendant's recitation of the evidence in her motion, the evidence adduced at trial established her guilt as to all 22 counts beyond a reasonable doubt.

The evidence presented at trial demonstrated that the defendant, her husband, John Morgan, and others had engaged in a "prime bank note trading" scheme through their company "Morgan European Holdings, APS" ("MEH") from March of 2005 to August of 2009. The Government presented testimony from numerous victim-investors and others that established that, in order to recruit investors into MEH, Marian Morgan and others made numerous fraudulent misrepresentations to the victims, including statements that the Morgans had

exclusive connections with prime bank note trade programs; that the projected profit from their investments would range between 30% and 70% per month; that their principle would be safe because it was held in escrow in an account at the Danske Bank in Denmark; and that the escrow account was maintained by Eli Hecksher, a Danish attorney and a co-defendant. Investor-victims also testified that the defendant threatened them with the loss of their investment in order to keep them from reporting the fraud to the Securities and Exchange Commission ("SEC") or to law enforcement.

The testimony of the investor victims, and IRS Special Agent Diane Knott, along with numerous emails to and from the defendant and exhibits from a variety of foreign and domestic financial institutions, established that the Morgans collected approximately $28 million from investor-victims across the United States, Canada, and the United Kingdom. Then, instead of maintaining the funds in the secure escrow account as promised, the Morgans diverted approximately $10.8 million of investor funds to their own use, spending the monies on real estate, cars, and a lavish lifestyle. Expert witness Professor James Byrne, whose expertise is in the area of international banking and commercial fraud, opined that the MEH program was a textbook example of a prime bank/high yield scheme.

The Government also presented testimonial and documentary evidence regarding the defendant's conduct in the civil SEC action that predated the criminal case. That evidence, which was elicited through SEC Attorney Zach Carlyle, established that the SEC action was based on the defendant's and others' involvement in defrauding investors by offering and selling investments in the same fictitious prime bank instrument trading program that was the subject of the criminal case.

Finally, the Government also offered into evidence the Morgans's income tax returns for 2005, 2006, and 2007, along with Special Agent Knott's analysis of their income from the MEH scheme and how their income tax returns under reported that income.

The defense's primary witness was the defendant Marian Morgan who testified for approximately 11 hours over a three day period. She offered an explanation for everything she had done during the relevant time period, including the meaning of numerous emails. In addition, the defense called fact witness Michael Von Guttenberg and expert witness Kevin Carreno. Finally, the defense attempted to call Terry Provence; however, Mr. Provence exercised his fifth amendment right to remain silent.

## II. Discussion

### A. Renewed Motion for Judgment of Acquittal

In considering a motion for judgment of acquittal, the evidence at trial must be viewed in the light most favorable to the government, "with all reasonable inferences and credibility choices made in the government's favor." *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990). The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Ospina*, 823 F.2d 429, 433 (11th Cir. 1987). "A jury is free to choose among reasonable constructions of the evidence." *Id.*

#### 1. Count One: Conspiracy

The evidence presented at trial established beyond a reasonable doubt that the defendant was guilty of conspiracy to commit wire fraud, the unlawful transfer of stolen funds and money laundering. The testimony of the witnesses established that Marian and John Morgan ran MEH

as partners and utilized Eli Heckscher as their escrow agent. Stephen Bowman was an intermediary with his own group of MEH investors. Hundreds of emails, most of which were authored by the defendant, and numerous other documents, corroborated the illegality and joint nature of the investment scheme. Those same emails also established the defendant's knowing and willful participation in the conspiracy. Moreover, the defendant's own testimony further confirmed her knowing and willful participation in the fraudulent scheme.

### 2. Counts Two through Nineteen: Wire Fraud, Transfer of Money Obtained by Fraud, and Money Laundering

Again, the evidence presented at trial established beyond a reasonable doubt that the defendant was guilty of the crimes of wire fraud (Counts Two through Eight), transfer of funds taken by fraud (Counts Nine through Thirteen) and money laundering (Counts Fourteen through Nineteen). The summery charts depicting the documentary exhibits supporting each one of these counts include Government exhibits 615 through 621 (wire fraud), 622 through 626 (interstate/foreign transfer of money obtained by fraud), and 627 through 632 (money laundering). The bank records that showed interstate and foreign transfers of funds, and testimony of some of the victims, provided evidence to show the interstate/foreign nature of the specified transactions and communications.

The defendant's assertion during trial that her husband, John Morgan, Eli Heckscher, or Stephen Bowman were responsible for certain aspects of the MEH scheme or the fact that other co-conspirators might have actually wired the money or ordered the transfer of funds does not absolve the defendant of responsibility. The law is settled that a conspirator may be held responsible under the law for a substantive offense in which she had no direct or personal participation, if such offense was committed by other members of the conspiracy during the

4

course of such conspiracy and in furtherance of its objects. *Pinkerton v. United States*, 328 U.S. 640 (1946).

Ample proof was admitted into evidence that the defendant and her co-conspirators participated in the conspiracy charged in Count One. Therefore, she could be found guilty of Counts Two through Nineteen as long as proof existed – which it did – establishing: (1) that the offenses charged in those counts were committed by a conspirator during the existence of the conspiracy and in furtherance of its objects; (2) that the defendant was a knowing and willful member of the conspiracy at the time of the commission of such offense; and (3) that the commission of such offense by a co-conspirator was a reasonably foreseeable consequence of the conspiracy. *Id.*

The defendant was also charged with aiding and abetting the substantive crimes in counts two through nineteen. As the jury was instructed, it is "possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged." (Dkt. 298, p.25.) "To sustain a conviction of aiding and abetting, the prosecution must show that the defendant associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." *United States v. Bryant*, 671 F.2d 450, 454 (11th Cir. 1982) (citations omitted).

### 3. Counts Twenty through Twenty-Two: Filing False Tax Returns

Finally, the evidence at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of filing false tax returns for each of the years charged in Counts Twenty through Twenty-Two. Despite her argument that she had no knowledge of the falsity of the returns, the Government presented evidence that the defendant knew or should have known

that her joint tax returns contained false statements.  Government witness, Brent Myers, CPA, testified that he relied on information provided to him by both John and Marian Morgan when preparing their tax returns.  He also testified that the defendant herself signed several of the supporting documents and engagement letters for the relevant periods and that he had communicated with her on numerous occasions regarding the preparation of the tax returns.  Furthermore, while on the stand, the defendant herself identified certain documents that were given to Myers as containing her handwriting, including those showing specific entries for itemized deductions.  Finally, Marian Morgan signed each of the tax returns.

> **B.** **Motion for New Trial**

Rule 33 states that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  The decision to grant or deny a new trial motion is within the sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion.  *United States v. Pedrick*, 181 F.3d 1264, 1266-67 (11th Cir. 1999).  The defendant asserts several grounds for a new trial, none of which meet the high standard required for the Court to set aside the verdict.

The defendant first argues that she was not provided sufficient funds or time to prepare adequately for trial.  (Dkt. 306, ¶¶19-23.)  She does not state with any specificity, however, how her presentation of evidence at trial would have been substantially different had she been granted additional funds or time.  The defendant's case-in-chief spanned nearly four trial days, during which she offered approximately sixty-five exhibits into evidence.  The defendant herself testified, and she presented the testimony of an expert and a fact witness.  Furthermore, the defendant and her trial counsel had ample time to review evidence and prepare her case.  The

case was originally indicted in December of 2009, and did not go to trial until September of 2011, and according to the Government, the overwhelming bulk of discovery was produced more than one year before the trial began. Finally, the defendant complains about numerous problems brought about by her incarceration. Although the defendant has repeatedly attempted to distinguish her ability to prepare for trial from that of every other incarcerated defendant, the fact remains that all defendants in custody, even those who are charged in complex cases, have restrictions as a result of being incarcerated.

The defendant next argues that the Government "introduced evidence that John Morgan had pled guilty without being coerced through the testimony of his lawyer, Robert Tager." (Dkt. 312, ¶¶24-28.) She argues that this violated her right to confrontation. This argument is without merit because it was the defendant's trial counsel–and not the Government–that first introduced the fact of John Morgan's guilty plea in re-cross-examination of Special Agent Knott, calling the plea agreement a "sweetheart deal." Then in defendant's testimony, she suggested that her husband, John Morgan, had been coerced into pleading guilty by the Government. The Government then called Mr. Tager to testify regarding the voluntariness of John Morgan's guilty plea in rebuttal, only after the defendant had suggested that it had been coerced.

Furthermore, the cases cited by the defendant do not support the grant of a new trial under the facts of this case. *United States v. Eason*, 920 F.2d 731, 735 (11th Cir. 1990), is factually distinguishable from the instant case because, in *Eason*, it was the United States that raised the fact of the co-defendant's conviction, not the defendant. In *United States v. McLain*, 823 F.2d 1457, 1465 (11th Cir. 1987), the Eleventh Circuit acknowledged that, although "[a] co-defendant's guilty plea may not be used as substantive evidence of the defendant's guilt," there

are factors that may be considered in determining whether it is proper to admit evidence of the plea for other purposes. Once of those factors is "whether the introduction of the plea was invited by defense counsel." *Id.* Here, the introduction of the plea was not merely "invited" by defense counsel, it was actually accomplished by defense counsel.

The defendant's next argument–that the Government improperly shifted the burden of proof to her to prove her innocence at trial–is also without merit. (Dkt. 312, ¶ 29.) Defendant argues that during the Government's case-in-chief, during their rebuttal case, during cross examination of the defendant and during closing arguments, the Government shifted the burden to the defendant to prove her innocence. Because the defendant testified, the Government was entitled to test the plausibility of her testimony on cross-examination. *See United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009) (ruling that the prosecution's cross-examination of the defendant regarding his financial records, aimed at testing the plausibility of the defendant's allegation that he was desperate, did not amount to improper burden-shifting). It was not improper burden-shifting for the Government to question the defendant on cross-examination regarding her various claims, such as her lack of bank records, or her statement that she had $45 million in a bank account. The defendant has not identified any improper questions posed by the Government that shifted the burden of proof.

Furthermore, even if the Government's statements somehow appeared to shift the burden, when the jury is instructed by the Court that the Government bears the burden of proof, the instruction is curative of any improper questions or comments. *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (ruling that, even if the prosecutor's arguments were improper, any potential prejudice regarding burden-shifting was diminished by the prosecutor's closing

8

statement that it bore the burden of proof, and by the court's explicit instruction to the same effect). The Court instructed the jury that the defendant "does not have to prove her innocence or produce any evidence at all," and that the Government "must prove guilt beyond a reasonable doubt." (Dkt. 298, p. 2.) Under these circumstances, the defendant is not entitled to a new trial.

The defendant next argues that the Government used certain colloquial animal phrases to attack her character and call into question her truthfulness. (Dkt. 306, ¶¶30-31.) One such phrase she challenges is, "If it walks like a duck and quacks like a duck, it's a duck." This argument is frivolous and does not warrant a new trial. The defendant does not argue how these comments prejudiced her, nor does she explain how these isolated comments spread out over a four-week trial misled the jury in the face of the overwhelming evidence of her guilt.

The defendant's final argument, that the Government's "improper commentary" on her religious beliefs, and its quotation of a Bible verse during closing arguments, was improper and prejudicial, also lacks merit. (Dkt. 306, ¶ 32.) The evidence at trial established that the defendant used religion as a sales technique to promote her fraud. The emails she wrote to investors often included references to faith and passages of scripture. Professor Byrne testified that prime bank schemes are often perpetrated among religious people. In light of this evidence, it was proper for the Government to ask questions related to the defendant's own communications with victim-investors, in which she used these professions of faith to entice those individuals into investing their money with her and MEH.

Moreover, during the defendant's direct examination, she testified that her MEH investors were her "prayer warriors" and that they were Christians like her. On cross-examination, the defendant acknowledged that her communications with investors included

9

professions of faith and incorporated Bible passages. The Government's questioning of the defendant therefore was not improper.

Finally, the Government's quotation of a Bible verse during closing arguments does not warrant a new trial. The defendant objected to the reference, and the Court sustained the objection and asked the jury to disregard it. The defendant has not shown how the Biblical reference prejudiced her in light of the record as a whole. *See United States v. Bailey*, 123 F.3d 1381, 1400-01 (11th Cir. 1997) (ruling that the prosecutor's two Biblical references during closing arguments were not prejudicial to the defendant because the prosecutor did not suggest that the defendant be adjudicated under Biblical law, or ask the jury to decide the case on a religious or emotional basis).

## III. Conclusion

Accordingly, for the reasons stated herein, Defendant Marian Morgan's Renewed Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 and Motion for New Trial Pursuant to Federal Rule of Criminal Procedure Rule 33 (Dkt. 306) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of November, 2011.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge