UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIAN MORGAN

v. Case No.: 8:15-cv-02325-T-24TBM
8:09-cr-00585-T-24TBM

UNITED STATES OF AMERICA

_____________________________________/

**ORDER**

This cause comes before the Court on Petitioner Marian Morgan's ("Petitioner") motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255. Civ. Dkt. 1; Cr. Dkt. 477. The United States of America ("Government") filed a response in opposition, to which Petitioner filed a reply. Civ. Dkts. 7 & 8. Upon review, the Court denies Petitioner's § 2255 motion and finds that a hearing on the motion is not necessary.

## I. BACKGROUND

### A. Procedural History

On May 31, 2011, a superseding indictment was returned against Petitioner on one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371 (Count I); seven counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts II-VIII); five counts of transferring funds taken by fraud, in violation of 18 U.S.C. §§ 2314 and 2 (Counts IX-XIII); six counts of money laundering, in violation of 18 U.S.C. §§ 1957 and 2 (Counts XIV-XIX); and three counts of making false statements on income tax returns, in violation of 26 U.S.C. § 7206(1) and 18

U.S.C. § 2 (Counts XX-XXII). Cr. Dkt. 122. John Morgan, Petitioner's husband; the Morgans' Danish lawyer, Eli Heckscher; and Stephen Bowman were also charged in the superseding indictment. *See id.*

John Morgan and Bowman executed plea agreements with the Government and pleaded guilty. John Morgan pleaded guilty to Counts I and XVI and Bowman pleaded guilty to Counts I and XII. Heckscher was prosecuted and convicted in Denmark, and the Government ultimately dismissed the charges against him. Cr. Dkt. 474. Petitioner went to trial. That trial lasted seventeen days and concluded with the jury finding Petitioner guilty of all of the charged offenses. Cr. Dkt. 300. On April 27, 2012, this Court sentenced Petitioner to 420 months of imprisonment followed by a 36 month period of supervised release. Cr. Dkt. 427. On May 7, 2012, the Court entered an Amended Judgment, however, the imprisonment term remained the same. Cr. Dkt. 434.

Petitioner appealed, raising claims related to her trial and challenging her sentence. Cr. Dkt. 441. On appeal, among other arguments, Petitioner asserted that "[a]llowing the attorney for [Petitioner's] husband and co-defendant to testify regarding the husband's guilty plea violated [Petitioner's] Sixth Amendment right of confrontation and deprived her of any opportunity for cross-examination as to the circumstances surrounding the guilty plea." *Initial Brief of Appellant Marian Morgan*, No. 12-12497, 2012 WL 6211570 at *7 (11th Cir. Dec. 4, 2012).

On appeal, the Eleventh Circuit affirmed Petitioner's convictions, but vacated her sentence and remanded for resentencing, finding that the Court should not have applied a two level increase for abuse of a position of trust under U.S.S.G. § 3B1.3. *United States v. Morgan*, 530 F. App'x 908, 909-10 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 1045 (2014). This Court resentenced Petitioner on remand to a guidelines-range sentence of 405 months of imprisonment on December

17, 2013. Cr. Dkt. 457. Petitioner again appealed and challenged her sentence. On October 6, 2014, the Eleventh Circuit affirmed. *See* Cr. Dkt. 466. On October 2, 2015, Petitioner filed her timely 28 U.S.C. § 2255 motion ("Motion"). Civ. Dkt. 1.

**B. Facts Related to Petitioner's Motion**

Over the course of Petitioner's 17 day trial, the jury was presented with voluminous evidence, including the testimony of 13 victims; 3 Danish law-enforcement officers, who had seized evidence from Heckscher's office in Copenhagen; and James Byrne, an expert on prime-bank-note investment schemes, who testified that trading programs like the ones Petitioner and John Morgan sold to their investors do not exist. Cr. Dkt. 353 at 153-212; Cr. Dkt. 359 at 202-40; Cr. Dkt. 360 at 5-59. IRS Special Agent Diane Knott ("SA Knott") also testified about her forensic examination of Petitioner's and John Morgan's bank accounts and Heckscher's escrow account. During her testimony, SA Knott testified about numerous summary exhibits showing the movement of investor funds into Petitioner's and John Morgan's personal accounts. *See* Cr. Dkt. 357 at 229-90; Cr. Dkt. 359 at 23-198; Civ. Dkt. 7, Exhib. A. Documents and digital evidence that was seized from Petitioner and John Morgan, which showed their communications with investors and Heckscher, were also introduced. Cr. Dkt. 354 at 9-260; Cr. Dkt. 355 at 6-78.

In total, the evidence showed that Petitioner, John Morgan, and the other members of the investment scheme raised just under $29 million from approximately 143 investors, almost $11 million of which Petitioner and John Morgan spent on their personal needs. *See* Civ. Dkt. 7, Exhib. A at 3-5. Ultimately, the evidence revealed that investors in the scheme lost a total of almost $14 million. *Id.*

Petitioner's § 2255 Motion concerns a chain of events that began on the fifth day of trial, September 12, 2011. On that day, the Government informed this Court that investigators had

interviewed John Morgan over the weekend and had obtained a statement from him that described incriminating facts about the investment scheme that implicated Petitioner. Cr. Dkt. 353 at 5-6. The Government provided a copy of John Morgan's statement to Petitioner's trial counsel and extended a plea offer to Petitioner. *Id.* Petitioner's trial counsel, Peter Sartes ("Trial Counsel"), told the Court that he had spoken to John Morgan's attorney, who confirmed that John Morgan had voluntarily provided the statement. *Id.* at 6-7. Petitioner acknowledged that she had discussed the plea offer with Trial Counsel, *id.* at 149-50, but had decided to decline the plea offer and to continue with the trial. *Id.* at 259.

On September 13, 2011, the Government called SA Knott to the stand. Cr. Dkt. 354 at 9. SA Knott identified numerous documents and electronic communications that had been seized from the Morgans and discussed various items that Danish law-enforcement officers had seized from Heckscher's office. *Id.* at 9-224.

During the cross-examination of SA Knott, Trial Counsel asked a series of questions attacking the thoroughness of the investigation and suggesting that the Government had rushed to judgment in accusing Petitioner. Cr. Dkt. 354 at 241-60; Cr. Dkt. 355 at 7-11, 13-14, 20-41. Specifically, the following exchange occurred:

Trial Counsel: So you make the assumption that this must be a fraud because what you told us is you didn't investigate it?

SA Knott: Well, we investigated enough to know that the documents — we do have witness testimony and evidence to show that these were—the documents associated with this Goldschild Boston and Dr. Tao all that were actually fraudulent documents.

We do have witness testimony to tell us[,] that were actually involved in this fraud with Miss Morgan[,] actually have told us that this was a fraud and that all these documents were obtained fraudulently and that the documents were fraudulent.

Trial Counsel: So someone told you and you believed them?

SA Knott: Yes.

Cr. Dkt. 355 at 25; Civ. Dkt. 7, Exhib. B.

After SA Knott's cross-examination, the Government requested a sidebar conference and argued that Petitioner's counsel had opened the door to inquiries on redirect about what SA Knott learned from John Morgan and Bowman by repeatedly asking questions about the inadequacy of the Government's investigation:

Government: Judge, we were very careful when we prepped Agent Knott to not have her discuss the fact that Mr. Morgan had pleaded guilty and Mr. Bowman had pleaded guilty and statements that they had made. But during the course of cross examination [Trial Counsel] repeatedly asked Agent Knott if she had made an assumption about the conduct being a fraud and had stopped her investigation.

And, in fact, Agent Knott has continued her investigation up through this past weekend and has had lengthy discussions with John Morgan even this past weekend in which John Morgan has admitted that all those documents were fraudulent and they knew they were fraudulent. And I believe on redirect since [Trial Counsel] has opened the door I should be able to ask Agent Knott about that.

Cr. Dkt. 355 at 47-48. Trial Counsel did not object to this area of inquiry, and asked if he could elicit testimony from SA Knott about John Morgan's and Bowman's guilty pleas:

Trial Counsel: I don't have any problem with that. The question I guess I have is I'm trying to figure out how far we're going to go with this because I may ask for redirect depending on what her answers are to be able to show that John has entered into a plea agreement and so has Bowman. I don't know if that's how far [the Government] intends on going.

Cr. Dkt. 355 at 49. Counsel for the Government replied that she intended to ask SA Knott only about her ongoing efforts to investigate the fraudulent scheme. *Id.*

On redirect, the Government asked SA Knott whether the investigation was still ongoing. *Id.* at 71-72. SA Knott explained that it was and that John Morgan was cooperating with the Government as recently as the past weekend. *Id.* In response to that, the prosecutor asked, "[W]hat, if anything, did John Morgan tell you? . . . About the fraudulent documents?" SA Knott responded, "John Morgan told us that the—that all of the documents regarding the MYRM Holdings and the whole dealings with Sam Bistahi[(sic)]; that they were all fraudulent documents and that he and Marian knew that those documents were fraudulent documents." *Id.*

Trial Counsel then conducted re-cross examination and elicited the fact that John Morgan had entered into a plea agreement with the Government. During re-cross, Trial Counsel questioned the credibility of John Morgan by suggesting that he was "attempting to throw his wife under the bus so he doesn't go to prison for the rest of his life," and by pointing out that John Morgan would likely benefit greatly at sentencing as a result of his guilty plea. Cr. Dkt. 355 at 75-76.

During her case, Petitioner testified at length on direct examination, asserting that she and her husband had done nothing wrong and that the investors' funds were secure in a Danish bank account. Cr. Dkt. 360-62. On cross-examination the Government asked the following:

> Government: Now, you've heard Special Agent Knott testify in this case that your husband has reported all of those documents regarding trades were fraudulent. You heard that didn't you?
>
> Petitioner: That's what she said, yes.
>
> Government: And do you –you know that your—you know that your husband said that, right?
>
> Petitioner: And how would I know that?
>
> Government: Well, you saw the one-page signed statement that he gave to the government; right?
>
> Petitioner: Under duress because he was told to do it or else? That one, yes.

Cr. Dkt. 362 at 210. Petitioner, again at another point on cross, reiterated her belief that John Morgan had been forced to sign something saying that their trade documents were fraudulent. *Id.* at 258.

After the defense rested, the Government advised the Court that it intended to call John Morgan's attorney in rebuttal to disprove Petitioner's statements that her husband's acknowledgment of guilt and his resulting cooperation with the Government were the results of duress. Cr. Dkt. 366 at 231-33. John Morgan's attorney was called and testified that John Morgan did not want to testify against his wife because he loved her, but would testify if the Government asked him to do so. Cr. Dkt. 366 at 268. On both direct and cross, John Morgan's attorney testified that John Morgan's plea had been entirely knowing and voluntary, and that John Morgan was cooperating with the Government. Cr. Dkt. 366 at 250-54, 256.

After the close of evidence, Petitioner's counsel incorporated John Morgan's attorney's testimony into his closing argument:

> You heard from Mr. Morgan's lawyer yesterday that Mr. Morgan was not coerced into entering into a plea agreement with the Government. He wasn't apparently coerced to sign an affidavit that the Government prepared for him and that was presented to him over the weekend. You know, you heard . . . his lawyer testify that John Morgan did not want to testify against his wife, and I submit to you the reason is because Marian Morgan is not guilty.

Cr. Dkt. 367 at 101. The Government also included remarks about John Morgan's statements in its closings. Specifically, the testimony of SA Knott concerning John Morgan's statements about his and Petitioner's knowledge about fraudulent documents.

**C. Petitioner's § 2255 Motion and Grounds for Relief**

Petitioner provides six grounds, which she claims entitle her to relief. All allege that Trial Counsel provided Petitioner with ineffective assistance of counsel in violation of the Sixth Amendment. Specifically, Petitioner advances that Trial Counsel provided ineffective assistance

of counsel: (1) by failing to make a motion in limine to exclude all testimony about co-defendant, alleged co-conspirator, and husband John Morgan's hearsay statement to SA Knott, which, if believed, proved Petitioner's criminal intent; (2) by failing to object to the Government's question to SA Knott that asked her to provide clearly hearsay testimony about an out-of-court statement made by Petitioner's husband John Morgan that directly established Petitioner's criminal intent; (3) by failing to move in limine to preclude, and by repeatedly failing to object to, questions from the Government to Petitioner during cross-examination that again emphasized the John Morgan hearsay statement made by SA Knott; (4) by failing to impeach John Morgan's hearsay statement, which directly established Petitioner's criminal intent, with prior inconsistent statements that were made by the hearsay declarant; (5) by failing to preclude introduction of evidence regarding John Morgan's guilty plea; and (6) through Trial Counsel's cumulative errors. Civ. Dkt. 1. Because of their similarity, the Court addresses Grounds One and Two together, and then each of the remaining grounds in turn.

## II. DISCUSSION

### A. Standard for Evaluating Whether a Defense Counsel Provided Ineffective Assistance of Counsel

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate that his attorney's performance was deficient, which requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. Second, a defendant must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *See id*. This test is not easily met, and the Eleventh Circuit has stated that "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel

are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted).

In order to succeed on an ineffective assistance of counsel claim, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Under the first prong of the test, deficient performance, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *See id*. at 690. "In reviewing counsel's performance, a court must avoid using the 'distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc) (quoting *Strickland*, 466 U.S. at 689). As it relates to strategy decisions, courts show great deference to choices dictated by reasonable strategy, *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994), and "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) (citations omitted). Reviewing courts "must [also] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered a sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Because of the "strong presumption in favor of competence," this is a "heavy" burden, as the petitioner "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1313-16 ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is 'not what is possible or what is prudent or appropriate, but only what is constitutionally compelled.'") (citation omitted).

Simply showing that, under the first prong, counsel erred is insufficient to satisfy the *Strickland* test. *See Strickland*, 466 U.S. at 691. Instead, the defects in counsel's performance must be prejudicial to the defense. *See id*. at 692. Therefore, under the second prong, a movant must establish that there was a reasonable probability that the results of the trial would have been different but for counsel's deficient performance. *See id*. at 694.

Finally, when conducting an analysis of an ineffective assistance of counsel claim, "[t]here is no reason for a court . . . to address both components of the inquiry [—performance and prejudice—] if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (recognizing that under *Strickland*, a court is free to dispose of ineffectiveness claims on either performance or prejudice grounds).

**B. Grounds One and Two**

In Grounds One and Two, Petitioner argues that Trial Counsel was constitutionally ineffective, because of how he dealt with the following hearsay statement: "John Morgan told us that the — that all of the documents regarding MYRM Holdings and the whole dealings with Sam Bistahi[(sic)], that they were all fraudulent documents and that he and [Petitioner] knew that those documents were fraudulent documents." Civ. Dkt. 1 at 7 (quoting Cr. Dkt. 367 at 71); *see also* Civ. Dkt. 1 at 3-11 (providing arguments concerning the John Morgan hearsay statement). Specifically, as to Ground One, Petitioner contends Trial Counsel should have moved in limine to exclude all testimony about this hearsay statement when he learned during sidebar that the Government intended to ask about the discussions SA Knott had with John Morgan over the prior weekend— because Trial Counsel knew that during those conversations John Morgan made the above admission, and it was unclear whether the Government was going to call John Morgan as a witness. *Id.* at 3-4. As for Ground Two, Petitioner asserts Trial Counsel should have objected to,

or at least moved to strike testimony related to, the Government's questions to SA Knott that sought to elicit this statement which directly established Petitioner's criminal intent. *Id.* 6-7.

Both Grounds One and Two suffer from the same flaw—Trial Counsel's actions, or inaction, in failing to object or move to limine out the hearsay statement appear to be choices dictated by reasonable trial strategy, and the Court will not deem Trial Counsel constitutionally insufficient because of his tactical decision, which may in retrospect have proved unsound. *See Rogers*, 13 F.3d at 386; *McNeal*, 722 F.2d at 676. Here, Trial Counsel's course of action is related to a trial strategy to "present a defense that the Government lacked preparation and made presumptions that [Petitioner] was guilty of the offenses set forth in the indictment simply based on her marital relationship with John [Morgan]." Dkt. 7, Exhib. C at 2-3. At this point in the trial, Trial Counsel had reason to believe that the Government might call John Morgan as a witness and elected to proceed with his strategy to pre-emptively attack John Morgan's credibility. *See id.* Based on this belief, it was a reasonable trial strategy for Trial Counsel to not object to the questions, move to strike, or move in limine, because he intended "to express to the Jury that [SA] Knott had made presumptions about certain items of evidence and their legitimacy as opposed to having done any forensic investigation to determine the original of certain documents and their legitimacy[]"—namely, that she relied on statements made by John Morgan, who stood to benefit from implicating his wife. *Id.* at 3.

In her reply, Petitioner cites an Eastern District of Michigan case in *Daly v. Burt*, 613 F.Supp.2d 916, 944-45 (E.D. Mich. 2009), for the proposition that allowing out-of-court statements that were made by a codefendant, which implicate a defendant, to go unchallenged is not a sound trial strategy. While the District Judge found that to be true based on his analysis of the unique facts and circumstances surrounding *Daly*, this Court does not agree that the unique

facts and circumstances in this case made Trial Counsel's decisions not to challenge or seek to exclude SA Knott's out-of-court statements an unreasonable trial strategy. *See Strickland,* 466 U.S. at 688-89 (explaining that courts must consider "whether counsel's assistance was reasonable considering all the circumstances[. . . ,]" that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant[,]" and that any set of uniform rules "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions") (citations omitted). Based on the facts and circumstances present in this case—specifically, the statement by SA Knott that her investigation revealed that the documents were fraudulent because of what she learned from a co-conspirator and the very real possibility that John Morgan could testify—Trial Counsel's strategy to discredit the entire investigation by discrediting John Morgan was reasonable. Trial Counsel executed this strategy by allowing the jury to hear the hearsay statement. Moreover, as the Eleventh Circuit has found, just because a defense counsel allows the jury to hear evidence that is potentially incriminating, does not necessarily mean that the defense counsel's decision is unreasonable. *See Wall v. Buss*, 658 F.3d 1274, 1279 (11th Cir. 2011) (recognizing "that it can be reasonable to let incriminating evidence come to the jury's attention"); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (finding in a prosecution for the kidnapping, sexual battery, and murder of a six-year old boy, counsel was not ineffective for allowing prosecutors to put into evidence the male defendant's confession to sexual relations with 45 boys and young men, where counsel's plan was to "bring into play the [defendant's] sexual proclivities").

Even if Petitioner could establish that Trial Counsel's performance was constitutionally deficient under the first prong of *Strickland*, she would still have to show there is a reasonable probability that, but for Trial Counsel's error's, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693. During its case-in-chief, the Government presented the jury with voluminous evidence related to Petitioner's guilt, including the testimony of 13 victims; 3 Danish law-enforcement officers, who had seized evidence from Heckscher's office in Copenhagen; and James Byrne, an expert on prime-bank-note investment schemes, who testified that trading programs like the ones Petitioner and John Morgan pitched to their investors do not exist. Cr. Dkt. 353 at 153-212; Cr. Dkt. 359 at 202-40; Cr. Dkt. 360 at 5-59. SA Knott also testified during the Government's case about her forensic examination of Petitioner's and John Morgan's bank accounts and Heckscher's escrow account. During that testimony, SA Knott testified about numerous summary exhibits that showed the movement of investor funds into Petitioner's and John Morgan's personal accounts. *See* Cr. Dkt. 357 at 229-90; Cr. Dkt. 359 at 23-198; Civ. Dkt. 7, Exhib. A. The Government also showed the jury documents and digital evidence that were seized from Petitioner and John Morgan, which showed their communications with investors and Heckscher. Cr. Dkt. 354 at 9-260; Cr. Dkt. 355 at 6-78. In addition to the evidence the Government presented during its case-in-chief, Petitioner took the stand, lied repeatedly, showed little remorse, and provided unbelievable explanations for her conduct. *See generally*, Cr. Dkt. 360-62; Cr. Dkt. 443 at 44-45, 78; *see also United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (defendant's statement, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilty); *United States v. Bennett*, 848 F.2d 1134, 1139 (11th Cir. 1988) (jury may view defendant's false explanatory statement as substantive evidence of guilt); *United*

*States v. Collins*, 779 F.2d 1520, 1530 (11th Cir. 1986) (jury not required to accept defendant's construction of events).

Even excluding the statement of John Morgan as testified to by SA Knott, the evidence of Petitioner's guilt was overwhelming. Petitioner has not, and cannot, show that there is a reasonable probability that the outcome of the trial would have changed had counsel objected to the Government's questions related to, moved to limine out, or moved to strike the hearsay statement of John Morgan regarding Petitioner's knowledge of the fraudulent documents. *See, e.g.*, *United States v. Boschen*, 845 F.2d 921, 922-23 (11th Cir. 1988) (given overwhelming evidence of guilt, allegations of ineffective assistance, including failure to object to prosecutor's argument and failure to investigate, even if true, are not sufficient to establish *Strickland* prejudice); *see also Streeter v. United States*, 335 F.App'x 859, 862-63 (11th Cir. 2009) (petitioner convicted in counterfeit-check scheme failed to prove prejudice resulting from counsel's alleged failure to adequately impeach government witnesses because verdict "enjoy[ed] overwhelming record support"); *Franklin v. United States*, 227 F.App'x 856, 861 (11th Cir. 2007) (in light of overwhelming evidence of guilt, petitioner failed to demonstrate prejudice resulting from counsel's failure to advise petitioner of right to testify).

Because Petitioner has not overcome "the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy[,]" *Strickland*, 466 U.S. at 690, and has not satisfied the prejudice prong, Grounds One and Two are **DENIED**.

**C. Ground Three**

Petitioner asserts Trial Counsel provided ineffective assistance of counsel by failing to move in limine to preclude, and by repeatedly failing to object to questions the Government asked Petitioner during cross-examination which emphasized John Morgan's hearsay statement that SA

Knott testified to on re-direct, as discussed in the above subsection on Grounds One and Two. *See* Civ. Dkt. 1 at 11. Like in Grounds One and Two, however, Petitioner has failed to show how this was not a part of Trial Counsel's reasonable trial strategy. For all of the reasons explained above, Petitioner has not met her burden of showing that Trial Counsel was constitutionally deficient for choosing the strategy of attacking the quality of the investigation and John Morgan's credibility when SA Knott testified that John Morgan was the individual who told her that the documents were fraudulent. *See* Civ. Dkt. 7, Exhib. C.

Moreover, even if Trial Counsel's failure to move to preclude or object to the Government's questioning Petitioner about the John Morgan hearsay statement was deficient under the first prong of the *Strickland* test, this failure must have prejudiced Petitioner to such a degree that the results of the trial cannot be trusted. Petitioner argues Trial Counsel's conduct related to Ground Three prejudiced her in the following ways: (1) it allowed the Government to "annihilate" Petitioner's credibility; (2) it permitted the Government to boil down SA Knott's testimony regarding John Morgan's hearsay statement into an even more "damning" summary "that all of those documents regarding trades were fraudulent[;]" (3) it allowed the Government to inform the jury that John Morgan "gave to the government" a "one-page signed statement" which the jury had not previously heard about and never saw because it was never admitted into evidence; and (4) it caused Petitioner to testify that John Morgan had signed the one-page statement while he was "under duress," which led to the Government calling Robert Tager, John Morgan's counsel, as a rebuttal witness. Civ. Dkt. 8 at 13.[1] For the reasons discussed below, this Court finds that Petitioner has not satisfied prong two of the *Strickland* test, and Ground Three should be DENIED.

[1] Petitioner also raises four new reasons in her reply for why Trial Counsel's allegedly ineffective assistance of counsel in Grounds One, Two, and Three prejudiced her: (1) the Government's case against Petitioner was entirely circumstantial, and the only direct evidence of Petitioner's criminal intent came from John Morgan's hearsay statement; (2) John Morgan was Petitioner's husband and co-defendant; (3) the hearsay statement eviscerated

First, as discussed above in the subsection on Grounds One and Two, the evidence against Petitioner was overwhelming and clearly supports the jury's guilty verdict. Next, contrary to Petitioner's argument that Trial Counsel's conduct enabled the Government to "annihilate" Petitioner's credibility, Petitioner's credibility was seriously in question long before she took the stand and testified. As the Government points out in its response, "[b]y that time, the jurors had seen countless emails that [Petitioner] had sent to victims urging them to send sizeable investments to Heckscher's escrow account, where they would be 'safe,' while at the same time directing Heckscher to wire investors' funds back to the Morgans' personal accounts." Civ. Dkt. 7 at 19 (citing 2013 WL 773121 at 5-9); Gov't Trial Exhibs. 611 & 614; Dkt. 7, Exhib. A at 3 & 5. The jurors had heard from the victims of the scheme, and had seen SA Knott's analysis of the bank accounts, which showed funds flowing first to Heckscher's escrow account and then back to the Morgans' several accounts. *See* Cr. Dkt. 350 at 120-193, 195-245(Dwornik); Cr. Dkt. 351 at 7-77 (Daniels); Cr. Dkt. 351 at 106-168 (Meyer); Cr. Dkt. 352 at 197-253 (Ryder); Cr. Dkt. 353 at 12-83 (Beg); Cr. Dkt. 355 at 79-178 (Beasley); Cr. Dkt. 355 at 178-198 (Braddock); Cr. Dkt. 355 at 199-221 (Groves); Cr. Dkt. 355 at 222-247 (Carroll); Cr. Dkt. 356 at 12-60, 62-79 (Carroll); Cr. Dkt. 356 at 80-91 (Hoff); Cr. Dkt. 356 at 92-129 (Ausmus); Cr. Dkt. 356 at 187-234 (McMillan); Cr. Dkt. 357 at 229-89; Cr. Dkt. 359 at 23-198; Civ. Dkt. 7, Exhib. A at 3 & 5. The jurors had also heard how the Morgans fled to Sri Lanka instead of participating in the related SEC enforcement action and how Petitioner had made false statements to the court in the SEC enforcement action. Cr. Dkt. 351 at 193, 216-18, 227-40; Cr. Dkt. 361 at 77-81; Cr. Dkt. 443 at 73-78. Moreover, the

---

Petitioner's defense, because it allowed the jury to disregard all of the documents as fraudulent; and (4) the Government emphasized the hearsay statement in both of its closing arguments. Civ. Dkt. 8 at 8-9. These arguments all address the effect the John Morgan hearsay statement, which was introduced prior to the cross-examination of Petitioner, had on the jury. As discussed above, the Court has already found that allowing the jury to hear the John Morgan hearsay statement was a part of Trial Counsel's strategy, which was reasonable in light of the facts and circumstances surrounding this case. Accordingly, the Court does not address these new arguments. The Court also does not address these arguments as to Ground Three, as the arguments appear to relate to Grounds One and Two.

jurors had heard Petitioner's testimony on direct examination, much of which was not credible in light of all of the other testimony and evidence. *See* Cr. Dkt. 360 at 155-186; Cr. Dkt. 443 at 44-45 & 78 (describing instances where the Court believed Petitioner was lying to mislead the jury).

Petitioner further argues she was prejudiced by Trial Counsel's failure to object to the Government's questions, because this allowed the Government to summarize the evidence concerning the fraudulent documents into a streamlined statement.[2] Petitioner ignores, however, that other evidence introduced at trial would have supported the Government's assertion that the documents relating to the trades were fraudulent and, therefore, there were multiple ways the prosecutor could have asked Petitioner about the fraudulent nature of the trading documents. For example, SA Knott testified that she did not see any legitimate trading documents during her review of the evidence in this case. Cr. Dkt. 355 at 62-63. Similarly, Professor Byrne testified that the trading programs at issue were not legitimate. *See* Cr. Dkt. 359 at 202-21, 225-26, 232-40; Cr. Dkt. 360 at 5-7, 50-59, 67.

Finally, as to Petitioner's reasons for prejudice three and four that relate to John Morgan's signed statement, Petitioner cannot claim as prejudice the consequences of the Government's references to the one-page signed statement and the calling of John Morgan's counsel as a witness. It was her own decision to pursue a trial strategy of claiming her husband was being forced to cooperate and signed the statement under duress when responding to the Government's questions about her husband. *See* Civ. Dkt. 7, Exhib. C at 3-4 (describing Petitioner's insistence that the one-page statement was coerced and involuntary, despite her review of the statement at issue and hearing about the voluntary nature of the statement before she testified). Days before the cross-

[2] Petitioner cites *United States v. Schwartz*, 541 F.3d 1331, 1352 (11th Cir. 2008), for support that the John Morgan hearsay statement "was particularly damaging because it summarized in one streamlined and articulate statement all of the Government's evidence . . . ." That case involved an appeal on the grounds that the district court committed a *Bruton* error. Petitioner has not explained how or why this case effects the *Strickland* analysis.

examination took place, Petitioner heard Trial Counsel advise the Court that he had confirmed with John Morgan's counsel that John Morgan's statement was voluntarily given and that Petitioner had reviewed that statement. Cr. Dkt. 353 at 5-7 & 149-50. However, prior to taking the stand, Petitioner decided to explain away her husband's cooperation and deliberately put this strategy in action when she feigned a lack of knowledge concerning John Morgan's cooperation and then claimed that the cooperation was the result of force and duress. *See* Civ. Dkt. 7, Exhib. C at 3-4. The direct consequences of this strategy—the Government's attempt to refute these statements through discussing John Morgan's one-page statement that Petitioner had already reviewed and through its decision to call John Morgan's counsel to testify to the voluntariness of John Morgan's cooperation—were brought about through Petitioner's decision to approach questions involving John Morgan's cooperation a particular way. *see Owens v. Guida*, 549 F.3d 399, 412 (6th Cir. 2008) (providing defendant cannot be permitted to manufacture winning ineffective assistance of counsel claim by sabotaging their own defense); *Coleman v. Mitchell*, 244 F.3d 533, 545-46 (6th Cir. 2001) (finding no deficient performance by counsel who followed client's instructions after client participated in strategic decisions)

Accordingly, because Petitioner cannot satisfy either prong of the *Strickland* test, Ground Three is **DENIED**.

**D. Ground Four**

In Ground Four, Petitioner claims that Trial Counsel provided ineffective assistance of counsel when he failed to further impeach John Morgan's hearsay statement as testified to by SA Knott with John Morgan's prior inconsistent statements, as allowed by Federal Rule of Evidence 806. Civ. Dkt. 1 at 15-18. Petitioner argues that Trial Counsel was present during pretrial joint-defense meetings between himself, Petitioner, John Morgan, and John Morgan's counsel, and, in

those meetings, John Morgan made statements concerning the Morgans' innocence. *Id.* Petitioner submits that Trial Counsel's failure to impeach John Morgan's hearsay statement that he and Petitioner knew the documents were fraudulent with prior inconsistent statements resulted in the lost opportunity to eliminate the "key 'proof'" of Petitioner's criminal intent and "thereby left a reasonable probability that the jury would have had a reasonable doubt." *Id.* at 18.

Petitioner's argument fails, because, at its core, her argument is Trial Counsel failed to elicit cumulative impeaching testimony, and "[i]t is well-settled in this Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002). As the record demonstrates, Trial Counsel elicited testimony from both SA Knott and John Morgan's attorney that highlighted John Morgan's motive to lie concerning the fraudulent character of the documents and whether Petitioner knew the documents were fraudulent—specifically, to reap the benefits of his plea agreement. *See* Cr. Dkt. 355 at 75-76; Cr. Dkt. 366 at 257-61. Had Trial Counsel elicited the prior inconsistent statements from John Morgan's counsel, the statements would have revealed the same motive to lie as the above testimony, and that is not a sufficient basis to find counsel constitutionally ineffective. *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("Ineffective assistance, however, will not be found merely because 'other testimony might have been elicited from those who testified.'") (citation omitted).

In her reply, Petitioner argues that "the fact that John Morgan had a motive to lie to reap the benefits of his plea agreement is not cumulative of another separate and independent fact that John Morgan had made inconsistent prior statements, which [Trial Counsel] had heard and which [he] knew [John Morgan's counsel] had heard . . . ." Civ. Dkt. 8 at 11. Petitioner cites three cases—*United States v. Sanfilippo*, 564 F.2d 176 (5th Cir. 1977); *Ventura v. Attorney General*,

*Florida*, 419 F.3d 1269 (11th Cir. 2005); and *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir. 1986) — in support of her contention in which a circuit court decided or noted that evidence that called into question the witness's character for truthfulness is not cumulative of evidence of the existence of an exchange of a plea or immunity for testimony. *Sanfilippo*, 564 F.2d at 178; *Ventura*, 419 F.3d at 1292 n.9; *Brown*, 785 F.2d at 1466. After reviewing these cases, the Court finds them inapplicable to the facts and circumstances before it, because all of the cited cases concern prosecutorial misconduct and the failure to disclose an exchange or the offer of a plea or immunity for the witness's testimony. *Sanfilippo*, 564 F.2d at 177-78; *Ventura*, 419 at 1286-92; *Brown*, 785 F.2d at 1464-66.

Accordingly, because Petitioner has not satisfied the first prong of the *Strickland* test, Ground Four is **DENIED.** Moreover, even if she had, as discussed in the subsection on Grounds One and Two above, she could not satisfy the prejudice prong of *Strickland*, because the record evidence clearly supports the jury's verdict.

**E. Ground Five**

In Ground Five, Petitioner claims that Trial Counsel was ineffective because he failed to preclude the introduction of rebuttal evidence from John Morgan's attorney regarding John Morgan's guilty plea. Civ. Dkt. 1 at 18-21. Specifically, Petitioner asserts that Trial Counsel should have objected on relevance grounds to questions directed to John Morgan's counsel concerning the circumstances surrounding the plea agreement, because Petitioner never explicitly testified that her husband had been coerced into signing the plea agreement, and there was nothing to rebut. *Id.*[3] Petitioner argues that Trial Counsel's failure allowed the jury to hear evidence

[3] The Government argues Ground Five should be dismissed as procedurally barred, because it was previously resolved against Petitioner on appeal. Civ. Dkt. 7 at 26-27. The Court disagrees. The claim Petitioner raised on direct appeal was that "[a]llowing the attorney for Marian Morgan's husband and co-defendant to testify regarding the husband's guilty plea violated Marian's Sixth Amendment right of confrontation and deprived her of any opportunity for cross-

concerning John Morgan's guilty plea to conspiracy, which was equivalent to "the [s]pecific testimony that the defendant helped me commit the crime which the Supreme Court found to be difficult to thrust out of mind." Dkt. 1 at 21 (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)) (internal quotations removed).

The Court disagrees that Trial Counsel was ineffective for failing to object to the rebuttal testimony on the basis of relevance, because any relevance objection would have been futile and counsel cannot be ineffective for failing to raise a non-meritorious objection. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (providing failure to raise meritless issues cannot prejudice a client). It is clear from the record that Petitioner made the circumstances surrounding John Morgan's cooperation with the Government highly relevant. During her testimony, Petitioner told the jury that her husband did not voluntarily cooperate with the Government through statements that her husband had signed the statement from the weekend jailhouse interview under "duress," that he was "told to do it or else," and that he was "forced" to sign something. *See* Cr. Dkt. 362 at 210. Accordingly, the facts and circumstances surrounding John Morgan's cooperation with the Government, including John Morgan's guilty plea, were relevant.

Moreover, Petitioner's argument that Trial Counsel's failure to object allowed the jury to learn that John Morgan admitted his guilt is incorrect. As discussed in the subsection on Grounds One and Two, as part of his trial strategy, Trial Counsel elicited testimony from SA Knott concerning the benefits that John Morgan stood to gain by pleading guilty long before Petitioner ever testified.

---

examination as to the circumstances surrounding the guilty plea." *Initial Brief of Appellant Marian Morgan*, No. 12-12497, 2012 WL 6211570 at *7 (11th Cir. Dec. 4, 2012). Whereas, Petitioner alleges in Ground Five that Trial Counsel was ineffective by failing to object on the grounds that John Morgan's guilty plea was irrelevant. Civ. Dkt. 1 at 19-20. Because Ground Five was not addressed on appeal, it is proper for this Court to consider it.

Because Petitioner has not shown that Trial Counsel was ineffective under prong one of *Strickland*, Ground Five is **DENIED**. Moreover, even if she had, like Grounds One through Four, she could not satisfy the prejudice prong of *Strickland* for all of the reasons laid out in the subsection on Grounds One and Two.

**F. Ground Six**

In Ground Six, Petitioner contends that Trial Counsel provided ineffective assistance of counsel through his cumulative errors as discussed in Grounds One through Five. *See* Civ. Dkt. 1 at 22-23. Because Petitioner has failed to demonstrate any deficiency in Trial Counsel's performance or prejudice resulting therefrom, her claim of cumulative error also fails. As explained by the Eleventh Circuit Court of Appeals, "[w]hile the prejudice inquiry should be a cumulative one as to the effect of all of the failures of counsel that meet the performance deficiency requirement, only the effect of counsel's actions or inactions that do meet that deficiency requirement are considered in determining prejudice." *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1269 (11th Cir. 2012).

Accordingly, Ground Six is **DENIED**.

**G. Request for Evidentiary Hearing**

Petitioner requests an evidentiary hearing on her Motion. She is not, however, entitled to an evidentiary hearing, nor is there any need for one in this case. It is Petitioner's burden to establish the need for an evidentiary hearing. *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir. 1984). In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). There is no need to hold an evidentiary hearing if the "files and

records or the case conclusively show that the prisoner is entitled to no relief." *Holmes v. United States*, 876 F.2d 1545, 1552-53 (11th Cir. 1989) (quoting 28 U.S.C. § 2255). Moreover, when examining whether a petitioner is entitled to relief, a district court may rely on affidavits if they are otherwise corroborated by the record—as Trial Counsel's is in this case. Here, the record and Trial Counsel's affidavit clearly show that Trial Counsel's actions met the constitutional standard and he rendered reasonably effective assistance. *See Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984).

## III. CONCLUSION

Accordingly for the reasons stated above, Petitioner Marian Morgan's § 2255 motion is **DENIED**. The Clerk is directed close the civil case and enter judgment in favor of the United States.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner Marian Morgan is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id*. "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 355-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not

made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, she is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of June, 2016.

SUSAN C. BUCKLEW
United States District Judge